## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| XOMA ROYALTY CORPORATION<br>(f/k/a XOMA CORPORATION), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-04484-JHS |
| | ) | |
| JANSSEN BIOTECH, INC.<br>(f/k/a CENTOCOR, INC.), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### REPORT OF RULE 26(f) MEETING

Pursuant to Federal Rule of Civil Procedure 26(f) and the Court's January 26, 2026 Order (Dkt. 59), counsel for Plaintiff XOMA Royalty Corporation and Defendant Janssen Biotech, Inc. conferred on February 4, 2026, and submit the following report of their meeting for the Court's consideration:

**1.     Discussion of Claims, Defenses and Relevant Issues**

(i)     XOMA's Statement

XOMA's Complaint and the Court's thorough decision denying Janssen's motion to dismiss set forth the salient factual background and highlight the primary issues in this case. XOMA will therefore keep its discussion of the background and issues here brief. Likewise, XOMA's responses to the arguments raised by Janssen below are set forth in its opposition to Janssen's motion to dismiss and will not be repeated again here.

This case is about the development and commercialization of what became Janssen's blockbuster therapeutic, Tremfya®. XOMA's BCE technology was key to the discovery and development of Tremfya®. The use of XOMA's BCE technology was governed by an interrelated

- 1 -

set of agreements between XOMA and Morphosys (the XOMA Master Licensing Agreement), and Morphosys and Janssen (the Centocor Agreement). XOMA was an express third-party beneficiary of the Centocor Agreement. The ultimate question in this case is whether Janssen breached its obligations to XOMA under the Centocor Agreement (or, in the alternative, whether Janssen was unjustly enriched) by commercializing Tremfya® without obtaining the requisite license from XOMA.

The Court has already resolved the threshold issues raised by Janssen. The primary issues on which the parties will need to conduct discovery are: (i) the interpretation of the XOMA Master Licensing Agreement and the Centocor Agreement, including the intent of the parties, course of dealing, course of performance, and industry custom; and (ii) determination of damages, including information regarding the value of comparable commercial licenses. The facts surrounding the use of XOMA's BCE technology in the development of what became Tremfya® may also be the subject of discovery. Expert discovery will be necessary on certain issues, including damages.

XOMA contends that motions for summary judgment are not productive to an efficient resolution of the issues in this case because they are unlikely to resolve or significantly narrow the primary issues. Among other things, the Court has already held that key provisions of the contracts at issue are ambiguous, and their interpretation is therefore for the jury, and discovery will likely demonstrate additional, material factual disputes. Summary judgment is thus unlikely to resolve the case in its entirety or substantially narrow the issues for trial.

(ii)    Janssen's Statement

Janssen contends that XOMA's claims lack factual and legal merit and that discovery will confirm there is no basis for relief. To this day, Janssen has devoted over twenty years of research, development, and clinical work to develop and commercialize Tremfya, a biologic therapy targeting a protein known as IL-23 that is linked to autoimmune diseases. XOMA asserted its

claims only after Tremfya became a commercial success. The claims are premised on expired patents and contractual provisions that do not apply to Janssen's conduct.

In the early 2000s, Janssen collaborated with a German biotech company, MorphoSys AG ("MorphoSys"), to identify antibody fragments using MorphoSys's proprietary HuCAL library technology. Janssen entered into a license agreement with MorphoSys under which Janssen paid royalties solely to MorphoSys, and MorphoSys assumed responsibility for any royalties or fees owed to third parties, such as XOMA. As part of its own research activities, MorphoSys separately licensed XOMA's bacterial cell expression ("BCE") technology—an upstream research tool—and paid XOMA handsomely for its use of that technology.

XOMA now claims that Janssen owes it royalties as the third-party beneficiary of Janssen's agreement with MorphoSys. For starters, in the relevant terms of the agreements, XOMA provided Janssen a covenant not to sue for patent infringement so long as Janssen abided by the terms of the license agreement. If Janssen breached those terms, the covenant not to sue would become ineffective and XOMA would have the right to sue Janssen for patent infringement. Tellingly, XOMA has not sued Janssen for patent infringement because Janssen has never practiced XOMA's patents in the manufacturing of Tremfya. Indeed, the governing agreements expressly permit Janssen to commercialize products without obtaining a separate license from XOMA so long as Janssen did not use XOMA's patented technology in commercial production. XOMA does not allege that Janssen used XOMA's BCE technology in the commercial production of Tremfya, and the undisputed facts show that Tremfya was manufactured using mammalian cell systems, not bacterial expression systems covered by XOMA's patents.

XOMA's claims also fail because the contractual limitation-of-liability provision bars the damages XOMA seeks. The contracts also foreclose any quasi-contract theories. In addition,

Janssen maintains that XOMA released the claims asserted here pursuant to a prior settlement agreement. Janssen anticipates that discovery on these issues will confirm that XOMA cannot establish liability or recoverable damages.

### 2.    Informal Disclosures

The parties will exchange their initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1) and the Court's January 26 Order (Dkt. 59) on February 9, 2026. The parties have not agreed to disclose additional information informally.

### 3.    Formal Discovery

No formal discovery has occurred to date. The parties agree to conduct formal discovery in accordance with the Federal Rules of Civil Procedure and Local Rules. The parties propose having a deadline for substantial completion of document production and expert discovery follow fact discovery, but otherwise do not foresee a need to conduct discovery in phases. The parties agree to follow the Court's preferred approach that, before moving for an order relating to discovery, the movant must request a telephone conference with the Court.

The parties conferred but were not able to reach agreement on timing for a case schedule. The parties' respective proposals are below. The parties agree that a discovery period exceeding 120-150 days is justified here given the complexity of the issues and the need for substantial discovery from non-party MorphoSys (which was acquired by another non-party, Novartis, in 2024). Because MorphoSys and Novartis have operations in Europe, one or both of these third parties may contend that the parties will need to take discovery in accordance with foreign procedures. The fact that the parties are informing the Court of these issues is not an admission that compliance with foreign discovery procedures, in fact, will be required under applicable law.

| PROPOSED DEADLINE | XOMA | JANSSEN |
|---|---|---|
| Join other parties or amend pleadings | 30 days prior to substantial completion of document discovery | 30 days prior to substantial completion of document discovery |
| Substantial Completion of Document Discovery | October 14, 2026 | December 18, 2026 |
| Close of Fact Discovery | January 14, 2027 | March 31, 2027 |
| Expert Reports (on issues for which party bears burden of proof) | February 12, 2027 | May 28, 2027 |
| Expert Rebuttal Reports | March 12, 2027 | July 9, 2027 |
| Expert Reply Reports | April 2, 2027 | August 6, 2027 |
| Expert Deposition Deadline | May 7, 2027 | September 17, 2027 |
| Close of All Discovery | May 7, 2027 | September 17, 2027 |
| Parties to inform each other regarding any issues on which they intend to submit summary judgment motions | June 4, 2027 | |
| Summary Judgment Motions | To be set by Court if necessary | October 29, 2027 |
| Oppositions to Summary Judgment | To be set by Court if necessary | December 3, 2027 |
| Reply ISO Summary Judgment | To be set by Court if necessary | December 17, 2027 |
| Pretrial Memo | July 16, 2027 | To be determined by the Court after ruling on summary judgment motions |
| Trial | September 13, 2027 | February 28, 2028 |

(i)    <u>XOMA's Position on the Proposed Schedule</u>

XOMA contends that its proposed schedule of a year for fact discovery and trial nine

months thereafter is more than sufficient for the parties to take necessary discovery and prepare

for trial, even when considering the potential delays associated with obtaining discovery from third parties Morphosys/Novartis. In line with the Court's stated preference for a discovery period limited to several months, XOMA initially proposed an even shorter schedule. After conferring with Janssen and considering the issues Janssen has raised, XOMA agreed to extend its proposed deadlines by approximately five months.

There is no doubt that this case involves some complex technologies and factual issues. But it involves a single plaintiff, a single defendant, and a single count for breach of contract (with an alternative claim for unjust enrichment). The parties are sophisticated commercial entities with significant resources and are represented by highly experienced counsel. This case presents no special difficulties that would require, as Janssen proposes, a twenty-one month discovery period—including nearly six months of expert discovery—and a trial date more than two years from the Rule 16 conference.

Janssen calls XOMA's proposal "compressed," refers to XOMA's proposed three-month period between substantial completion of document discovery and the close of fact discovery as "near-instantaneous," and claims that experts will not have had a "meaningful opportunity" to get up to speed by month thirteen of discovery—four months after substantial completion of document discovery and a month after the end of depositions. Those rhetorical protests ring hollow at this point. Planning, up front, to drag this case out would only increase the cost and burden on the parties and the Court, and would not promote the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. The schedule proposed by XOMA will require the parties to be diligent and avoid undue delay. If it turns out that there are unforeseen material delays in the case, the parties can confer in good faith and individually or jointly come back to the Court to request an extension to certain deadlines.

(ii)    <u>Janssen's Position on the Proposed Schedule</u>

Janssen's proposed schedule reflects the practical requirements of litigating a case of this scope and complexity. XOMA's proposal is front-loaded in ways that are unworkable and detached from the discovery that will actually be required.

This action raises unusually complex factual and legal questions concerning the alleged use of research tools, historical licensing arrangements spanning multiple entities, and highly technical scientific and manufacturing processes. Discovery will require careful development of a factual record addressing, among other things: (i) whether, when, and how XOMA's patented bacterial cell expression technology was used—if at all—at discrete stages of research and development; (ii) the technical and operational separation between upstream research activities and downstream commercialization of Tremfya; and (iii) the contractual allocation of rights and obligations among Janssen, MorphoSys, and XOMA. These issues cannot be developed on the compressed schedule XOMA proposes without risking incomplete discovery and serial disputes.

XOMA's proposed deadlines illustrate the problem.  XOMA seeks to substantially complete document productions by October 14, 2026, and to close fact discovery by January 14, 2027. That sequencing assumes a near-instantaneous completion of document discovery, deposition discovery, and third-party discovery in a case where the relevant events date back more than two decades, involve highly technical subject matter, and depend on records and witnesses located across multiple entities and jurisdictions. It also does not account for the fact that the parties will need to take discovery from MorphoSys—a German entity that played a central role in the relevant research collaboration.

By contrast, Janssen's proposal allows for substantial completion of document production by December 18, 2026, followed by an orderly close of fact discovery on March 31, 2027. This structure reflects the reality that meaningful depositions—particularly of scientific and technical

witnesses—cannot proceed until the core documentary record is substantially complete. XOMA's schedule would instead force the parties to proceed on an incomplete record or repeatedly reopen depositions, increasing cost, inefficiency, and the likelihood of disputes.

XOMA's expert schedule compounds these problems. XOMA proposes to exchange opening expert reports on February 12, 2027, before experts would have a meaningful opportunity to review a complete factual record or to analyze the highly technical scientific, manufacturing, and licensing issues central to this case. Given the complexity of the antibody discovery methods, expression systems, and manufacturing processes at issue—as well as the historical and economic questions bearing on licensing practices—expert analysis here necessarily requires substantial time. Compressing expert discovery as XOMA proposes would increase the likelihood of supplemental reports, rebuttal disputes, and motion practice. Janssen's proposal, by contrast, appropriately sequences expert disclosures meaningfully after the close of fact discovery, ensuring that expert testimony is grounded in a developed and stable factual record.

In short, Janssen's proposed schedule is a proportional and disciplined framework designed to allow discovery to proceed efficiently, minimize avoidable disputes, and ensure that expert and dispositive motion practice is based on a complete evidentiary record. XOMA's proposed timeline would instead compress complex discovery into an unworkable window, to the detriment of both the parties and the Court.

### 4.    Electronic Discovery

The parties are conferring and agree to submit a stipulated ESI order to govern electronic discovery in this case, including on topics such as the format for production of ESI, privilege logging, and other considerations intended to streamline the production of ESI and promote the "just, speedy and inexpensive determination" of this action as contemplated by Fed. R. Civ. P. 1.

The parties have discussed a draft ESI order and intend to submit it for court approval within two weeks.

The parties also agree to meet and confer to reach agreement, as necessary, on other aspects of ESI discovery, such as identification of records custodians, search methodologies including relevant terms and date restrictions, and the location of both custodial and non-custodial data sources.

The parties further agree to submit a stipulated confidentiality order to govern the exchange of confidential information and documents in this case, including to protect against the inadvertent disclosure of privileged information as contemplated by Federal Rule of Evidence 502(d). The parties have discussed a draft confidentiality order and intend to submit it for court approval within two weeks.

### 5.    Expert Witness Disclosures

While the parties have not been able to agree on precise timing, the parties agree to simultaneously exchange opening expert reports on issues for which the party bears the burden of proof shortly after the close of fact discovery. The parties further agree to simultaneously exchange rebuttal and reply reports.  The parties agree that depositions of experts will be needed.

### 6.    Early Settlement or Resolution

The parties had preliminary settlement discussions and participated in an initial mediation session before a JAMS mediator in October 2025, but did not reach an agreement. The parties have agreed to revisit mediation before the JAMS mediator in the future. Counsel for both parties have familiarized themselves with Local Rule of Civil Procedure 53.3 and have made efforts to advise their clients of various ADR options, including mediation, arbitration, and settlement discussions.

### 7.    Trial

The parties request trial dates in the proposed schedule above, and currently estimate a trial would require approximately 5-7 full trial days.

### 8.    Other Matters

The parties would like to identify one additional topic for the Court: whether the parties need to seek leave of the Court before moving for summary judgment. The parties have different perspectives on the issue. The parties have no additional matters to identify at this time.

#### (i)    XOMA's Position on Summary Judgment Motions

XOMA proposes that the Court require the parties to seek leave from the Court before filing motions for summary judgment. Many district judges require conferences or letters before filing motions for summary judgment as a matter of course, and it is particularly appropriate in this case. The Court has already held that key provisions of the relevant agreements are ambiguous, and therefore their interpretation based on the parties' intent is for the fact-finder. It is well-established that an ambiguity almost always precludes summary judgment, and the Third Circuit has clearly stated that exceptions are "the rare case." *Buchanan v. Reliance Ins. Co. (In re Color Tile, Inc.)*, 475 F.3d 508, 516 (3d Cir. 2007) (quoting *Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001)); *cf. Brown & Brown, Inc. v. Cola*, 2011 U.S. Dist. LEXIS 31147, at *36 (E.D. Pa. Mar. 23, 2011) ("Summary judgment is notoriously inappropriate for determination of claims in which issues of intent . . . play dominant roles.") (cleaned up). Requiring pre-motion Court involvement will help avoid unnecessary summary judgment practice and facilitate the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

#### (ii)    Janssen's Position on Summary Judgment Motions

There is no basis in XOMA's position to require advance leave of Court before a party may file a motion for summary judgment under Federal Rule of Civil Procedure 56, which by its terms

"is applicable to all actions." Fed. R. Civ. P. 56 advisory committee's note. Neither the Local Civil Rules nor this Court's individual practices impose such a gatekeeping requirement, and XOMA identifies no authority justifying the imposition of one here. Engrafting an extra procedural hurdle onto Rule 56 would serve only to delay resolution of potentially dispositive issues and to burden the Court with unnecessary pre-motion proceedings. The Court should permit discovery to proceed and allow the parties to bring any summary judgment motions in the ordinary course, on a full factual record.

XOMA's premise—that contractual ambiguity "almost always precludes summary judgment"—is incorrect as a matter of law. Courts routinely conclude at the pleading stage that a contract is ambiguous and then resolve that ambiguity at summary judgment based on extrinsic evidence developed in discovery. *See, e.g.*, *Meritor Heavy Vehicle Sys., LLC v. Quimco S.A. de C.V.*, No. 14-cv-5319 (N.D. Ill. Feb. 7, 2017), ECF No. 272 (resolving contractual ambiguity on summary judgment based on extrinsic evidence); *McDonnel Grp. L.L.C. v. Starr Surplus Lines Ins. Co.*, 126 F.4th 1100, 1105 (5th Cir. 2025) (holding that "extrinsic evidence resolved the ambiguity … as a matter of law, leaving no genuine issue of material fact"); *Wartsila Diesel, Inc. v. Sierra Rutile, Ltd.*, 1996 WL 724929, at *5 (E.D. Pa. Dec. 16, 1996) ("If the contract is found to be ambiguous, the Court then examines the interpretive facts on the summary judgment record, and, if such evidence establishes the proper interpretation of the contract, summary judgment may likewise be granted"). Far from being "rare," resolution of ambiguous contractual provisions at summary judgment is a well-established and efficient application of Rule 56.

Summary judgment may also materially streamline this case. XOMA has pled breach of contract and unjust enrichment in the alternative, a posture that courts frequently permit at the pleading stage but resolve at summary judgment once the evidentiary record establishes whether

the parties' relationship is governed by enforceable written agreements. *See C.J. Hughes Construction Co. Inc. v. EQM Gathering OPCO, LLC*, No. 2:18-cv-168 (W.D. Pa. June 24, 2020), ECF No. 99 at 16–17 (permitting unjust enrichment claim to proceed on a motion to dismiss but ultimately dismissing that same claim at summary judgment where the evidence established that the parties were bound by written contracts); *see also United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) (denying motion to dismiss unjust enrichment claim pled in the alternative and instructing defendants to raise the issue in a motion for summary judgment after the completion of discovery). Allowing summary judgment practice to proceed in the normal course may therefore narrow—or eliminate—claims and issues for trial, promoting efficiency rather than wasting resources.

Dated: February 6, 2026

Respectfully Submitted,

/s/ *John S. Summers*
John S. Summers
**HANGLEY ARONCHICK SEGAL**
**PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
jsummers@hangley.com
(215) 568-6200

Eric J. Marandett (*pro hac vice*)
G. Mark Edgarton (*pro hac vice*)
Natalia Smychkovich (*pro hac vice*)
Derek H. Farquhar (*pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
emarandett@choate.com
gedgarton@choate.com
nsmychkovich@choate.com
dfarquhar@choate.com

*Counsel for Plaintiff*

/s/  *Thomas F. Burke*
Thomas F. Burke
Michael R. McDonald
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500
(215) 864-8999 (fax)
burket@ballardspahr.com
mcdonaldm@ballardspahr.com

**LINKLATERS LLP**
Adeel A. Mangi (*pro hac vice*)
Muhammad U. Faridi (*pro hac vice*)
Sara A. Arrow (*pro hac vice*)
Jake E. Struebing (*pro hac vice*)
Benjamin K. Bolnick (*pro hac vice*)
Sarah Hardtke (*pro hac vice*)
1290 Avenue of the Americas
New York, NY 10104
(212) 903-9000
(212) 903-9100 (fax)
adeel.mangi@linklaters.com
muhammad.faridi@linklaters.com
sara.arrow@linklaters.com
jakeelijah.struebing@linklaters.com
ben.bolnick@linklaters.com
sarah.hardtke@linklaters.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2026, I electronically filed the foregoing using the

CM/ECF system, which will send notification of such filing to all parties of record.


<u>/s/  *Thomas F. Burke*</u>